**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**SAMUEL CAPNORD**                                                                              **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.: 4:22-CV-00151-MPM-JMV**

**WALMART STORES EAST, LP**                                                          **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendant Walmart Stores East, LP for summary judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff Samuel Capnord has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is a premises liability action arising out of a January 22, 2021 incident in which plaintiff allegedly slipped and fell at the Greenwood Walmart.  The complaint in this case seeks damages for plaintiff's alleged injuries resulting from the accident, but defendant has presently filed a motion for summary judgment, arguing that it faces no potential liability in this case and that it is entitled to judgment as a matter of law.

In considering defendant's motion, this court begins with the observation that there has been, from the very start, a strong odor of dodginess to plaintiff's claims in this case.  In so stating, this court notes that, in seeking recovery for his alleged slip and fall injuries, plaintiff initially sued both Walmart and its employee Tevin Cosey.  In his complaint, plaintiff alleged that Cosey "was negligent in responding to reports of a dangerous condition on the floor [and] in

1

not properly monitoring the condition of the premises, ceiling, AC units, cooler, or product on the shelves." [See para 11 of Complaint.] However, in considering defendant's arguments that Cosey had been fraudulently joined in this action, this court wrote, in a January 3, 2023 order denying remand, that:

> [W]hile plaintiff's complaint "says the right things," his affidavit makes it clear that he has no factual basis for believing that Cosey was in any way responsible for the accident in this case. In so stating, this court notes that Cosey asserts in his own affidavit that his job at the Greenwood Walmart was to serve as a "Digital Coach" responsibility it was to "make sure customer's online merchandise orders were done correctly and filled in a timely manner." [Affidavit at 1]. As one would expect from an employee of this nature, Cosey asserted that he did not have any responsibility for "responding to reports of alleged dangerous conditions on the floor," nor was it his job to "to monitor the condition of the premises, ceiling, air conditioning, coolers, or products on the shelves" as alleged by Plaintiff in his complaint. [*Id.*] With regard to the specific incident in this case, Cosey asserts that "I have no personal knowledge of the incident alleged by plaintiff whereby he claimed water or another substance was on the floor of the Walmart store in Greenwood, Mississippi on January 22, 2021." [Affidavit at 2].

[Slip op. at 3].

This court thus noted that Cosey claimed to occupy an online sales position which could not conceivably have given him the work responsibilities attributed to him by plaintiff. In noting the factual weakness of plaintiff's allegations in this regard, this court wrote that:

> Plaintiff cites his own "understanding" of what Cosey's job responsibilities were, but neither his affidavit nor his brief explains what his basis for this understanding is or why this court should provide it with any credence in light of Cosey's own assertion that he served as a Digital Coach responsible for handling online merchandise orders. Without question, Cosey is in a far better position to know what his job responsibilities were than plaintiff, and, in order to rebut his affidavit, it is incumbent upon plaintiff to offer more than his unexplained "understandings."
> Cosey's general job responsibilities aside, plaintiff's affidavit provides this court with no indication that there is any factual substance behind his allegation that Cosey "was negligent in responding to reports of a dangerous condition on the floor." [Paragraph 11 of complaint]. Indeed, it seems far more likely that plaintiff simply wished to have at least one non-diverse employee to sue in order to defeat diversity jurisdiction and that Cosey's name "stuck in his mind" from having assisted him in filling out the incident report. If there is any more factual basis for suing Cosey than this, then it is not apparent from either plaintiff's affidavit or his remand briefing. This court accordingly concludes that there is no reasonable basis for believing that plaintiff would be able to

recover against Cosey under Mississippi law and that this defendant is entitled to be dismissed upon a finding of fraudulent joinder.

[Slip op. at 3-4].

In light of this prior order, Cosey's liability is no longer an issue in this case, but, all the same, this court is not in a position to simply forget that plaintiff saw fit to assert negligence claims against this particular employee based on such a weak factual basis. Litigants may gain or lose credibility in the eyes of a court through their actions in a case, and it is safe to say that, in light of the parties' briefing on the motion to remand, the basic honesty of plaintiff's claims in this case seems very much in question. That brings this court to the instant motion for summary judgment, in which, once again, Walmart has managed to cast serious doubt upon plaintiff's claims. This time, however, this court is confronted with summary judgment evidence which appears to not only be weak, but fraudulently manufactured by plaintiff.

In so stating, this court notes that, in his deposition, plaintiff produced printouts of photographs which, he repeatedly testified, he took on the day of the accident. Specifically, plaintiff testified that:

> Q: Okay, so, Mr. Capnord, these are photographs that we've now marked as an exhibit to your deposition, Exhibit 2A and they go through all of the way, letter all of the way through 2I, as in ice, right?
> A: Okay.
> Q: Okay? And your – these, if I understand from your testimony, these are photographs you took the day of the incident, January 21 or 22, 2021, correct?
> A: Yes.

[Plaintiffs depo. at 38]. Plaintiff was thus clear that he took all of the photographs in question on January 22, 2021, which was the day of the accident. However, rather than accepting plaintiff's printouts and description of the photographs at face value, counsel for defendant wisely requested and obtained the actual electronic data and JPEG photographs from plaintiff's phone. These photos are listed as exhibit 5 to defendants' motion, and they include what clearly appears

to be electronic data recorded by the phone at the time each photo was taken. This electronic

data includes the digital size of each photograph, and, most crucially for the purposes of this

case, the date upon which each was taken.

This court has reviewed the photographs in question, and while the digital information

does indicate that the first several photos, depicting a puddle of water on the floor of the store,

were taken on January 22, 2021, they indicate that several other photos were not taken until

September 15, 2022. [Exhibit 5 at 6-10]. These latter photos include pipes on the ceiling of the

store and a large white bucket on the floor. In his deposition, plaintiff sought to use these

photographs to buttress his claims, testifying that:

> Q: What is 2E a picture of?
> A: That's the pipe running from the ceiling.
> Q: Okay. And this shows the water pouring from the pope? Is that what you're telling
> me?
> A: Yeah.
> Q: Can you pinpoint on that particular photograph, 2E, where the water was coming from
> this pipe?
> A: Well, the drips were coming from outside of the pipe, outside of it into the bucket.

[Depo. at 45].

This court notes that, while it seems highly likely that plaintiff simply staged these latter

photographs over a year and a half after the alleged accident, he does not appear to have done a

very good job at it. Indeed, much like Walmart's counsel at plaintiff's deposition, this court is

unable to discern any water coming from the pipes in the photographs, and, moreover, there are

multiple photos of multiple pipes, with no clear indication of which pipe is supposedly the

incriminating one. The photograph of the bucket strikes this court as constituting even clearer

evidence of a deliberate fabrication of evidence by plaintiff since, aside from having apparently

been taken a year and a half after the accident, the final photograph depicts a bucket located in

front of a completely different set of merchandise than is visible above the puddle of water in the

4

first photographs. [Exhibit 5 at p. 10]. Of course, it is entirely predictable that different merchandise would have been present on Walmart's shelves a year and a half after the accident, but this fact apparently did not dissuade plaintiff from attempting to buttress his case by staging the bucket photograph. This bucket was evidently designed to show that Walmart had actual knowledge of the puddle on its floor, and, as noted below, such actual knowledge may form a basis for liability in slip and fall cases.

This court notes that plaintiff's original counsel withdrew from the case following these revelations, and, in his summary judgment brief, his new counsel offers no substantive defense to allegations that his client fabricated evidence in this case. To the contrary, counsel merely writes in his brief that:

> Walmart alleges that the Plaintiff's case is not meritorious due to alleged misstatements made during Plaintiff's deposition. Defendants argue that the photos the Plaintiff produced depicting where he fell were from two different areas on two different days. Defendant avers that Plaintiff produced photos of the area where Plaintiff suffered his fall on the date that the fall took place and a second set of photographs were taken 19 months later in front of bleach not air fresheners.
> Plaintiff submits that Defendants have not met its burden of proof that any of the alleged misrepresentations were material or knowingly and willfully made. Walmart failed to produce camera footage or still images for the day of the incident which would show the Plaintiff's fall and the hazardous conditions of its premises on either day. The Plaintiff was lawfully on Defendant's premises, Defendant owed a legal duty to keep their premise and merchandise free and clear of hazardous conditions, Defendants negligence in failing to keep their premises and merchandise free and clear of hazardous conditions are a direct and proximate cause of Plaintiff's injuries that required medical treatment. There are genuine issues of material fact in dispute and Plaintiff is entitled to a trial on the merits so that this Honorable Court can decide which of the competing version of acts, are more plausible. For this reason, Defendant's motion for summary judgment should be denied.

[Brief at 2]. Counsel further argues that:

> Plaintiff agrees that there may have been some discrepancies in Plaintiff's testimony. Plaintiff is not a Walmart employee and cannot be held accountable for not knowing exactly where the hazardous conditions derived. The question is whether this Court, at the summary judgment stage, may assume the role of fact finder and declare that these differences are material and that they were knowingly and willfully made. Plaintiff

submits that his question must be answered in the negative and that Defendant's motion should be denied.

[Brief at 2-3].

Counsel thus acknowledges "that there may have been some discrepancies in Plaintiff's testimony," which strikes this court as being very much an understatement. Moreover, counsel makes no effort to argue that the timestamps on the photographs in Exhibit 5 are not what Walmart represents them as being, and they certainly strike this court as being accurate records of when the photos were taken. Furthermore, this court can discern no possible reason for plaintiff to have staged these photographs a year and a half after the accident, other than as part of a deliberate effort to fabricate evidence and to commit a fraud upon the court. This court seriously considered dismissing this case on this basis, but it is given pause by the extremely high amount of proof which is required to do so. Indeed, the Fifth Circuit has held that:

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999) (quoting *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)).

The Fifth Circuit has thus held that "the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court," and this court is aware of no reason to think that plaintiff's former counsel was implicated in the apparent staging of photographs by plaintiff. Assuming that this constitutes sufficient reason not to dismiss this action as a fraud on the court, this court alternatively concludes that plaintiff is unable to establish genuine fact issues regarding his slip-and-fall claims, based solely on their merit. In so stating, this court notes that,

6

under Mississippi law, a store or other invitor may only be held liable in slip-and-fall actions if the plaintiff is able to "(1) show that some negligent act of the defendant caused his injury; (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff, or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant[.]" *Bonner v. Imperial Palace of Miss.*, LLC, 117 So.3d 678, 682 (Miss. Ct. App. 2013).

In concluding that no genuine issue of fact exists regarding Walmart's liability under any of these three potential bases, this court does acknowledge that timestamps indicate that plaintiff did, in fact, take the initial photographs of the puddle on the Walmart floor on the day he allegedly injured himself. Frankly, however, this court has little confidence that plaintiff did not simply pour the water on the floor himself and then photograph it, but, even assuming that the photograph of the puddle is genuine, then it nevertheless finds this to be insufficient to create triable fact issues in this case. In so stating, this court emphasizes that there is no indication that Walmart caused the puddle to be on the floor through its negligence, that it had actual knowledge of its presence, or that it had been on the floor for a sufficient amount of time to impute constructive knowledge of it to Walmart. Indeed, it seems likely to this court that plaintiff himself recognized this weakness in his proof long after the accident and sought to rectify it by staging the photographs of the pipes and the bucket on the floor. While this court believes that a genuine photograph of a bucket placed on the floor to collect water might, in fact, assist plaintiff in establishing potential liability, the evidence very strongly supports a conclusion that this photograph was staged, for the reasons stated above. This court accordingly concludes that no genuine issues of material fact exist regarding Walmart's potential liability in this case and that its motion for summary judgment is due to be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

So ordered, this the 12th day of June, 2024

/s/ Michael P. Mills
U.S. DISTRICT COURT